UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY T. B., o/b/o
TIMOTHY J. B., deceased,[1]
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:23-cv-214
Litkovitz, M.J.

**ORDER**

Plaintiff Timothy T. B.[2] brings this action under 42 U.S.C. § 405(g) on behalf of his deceased father for judicial review of the final decision of the Commissioner of Social Security (Commissioner) finding Timothy J. B. was entitled to a closed period of Disability Insurance Benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response (Doc. 9), and plaintiff's reply (Doc. 10).

**I. Procedural Background**

Plaintiff[3] filed an application for DIB in December 2018 alleging disability beginning January 1, 2018 due to cervical spine deformity. (Tr. 167-68, 209). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* video hearing before administrative law judge (ALJ) Thuy-Ahn T Nguyen. Plaintiff and a vocational expert (VE) appeared and testified at the hearing on December 16, 2021. (Tr. 35-49). On February 2, 2022, the ALJ issued decision concluding that plaintiff was disabled from his alleged onset date of January 1, 2018 through May 12, 2020 but not disabled as of May 13, 2020

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Timothy T. B. was substituted as plaintiff for Timothy J. B. (Doc. 26).

[3] When discussing the administrative and medical records in this Order, the term "plaintiff" refers to the decedent, Timothy J. B.

due to medical improvement. (Tr. 14-30). This decision became the final decision of the Commissioner when the Appeals Council denied review on February 24, 2023. (Tr. 1-3).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

>1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
>2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
>3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
>4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
>5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

2

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 1, 2018, the date [plaintiff] became disabled (20 CFR 404.1571 *et seq*.).
>
> 3. From January 1, 2018 through May 12, 2020, the period during which [plaintiff] was under a disability, [plaintiff] had the following severe impairment: disorders of the spine including [d]egenerative disc disease of the thoracic and cervical spine with spinal fusion between C2 and T5 (20 CFR 404.1520(c)).
>
> 4. From January 1, 2018 through May 12, 2020, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, from January 1, 2018 through May 12, 2020, [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [plaintiff] could have frequently stooped, kneeled, and crouched; occasionally climbed ramps or stairs, crawl, push/pull with the bilateral upper extremities, and occasionally engaged in overhead reaching with the bilateral upper extremities; and never have climbed ladders, ropes, or scaffolds. Additionally, [plaintiff] should have avoided concentrated exposure to wetness and vibration as well as all exposure to unprotected heights or dangerous machinery.
>
> 6. From January 1, 2018 through May 12, 2020, [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[4]

---

[4] Plaintiff's past relevant work was as an iron worker, a skilled, heavy level of exertion position. (Tr. 26, 47).

7. [Plaintiff] was an individual closely approaching advanced age[] on the established disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. [Plaintiff]'s acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

10. From January 1, 2018 through May 12, 2020, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1560(c) and 404.1566).[5]

11. [Plaintiff] was under a disability, as defined by the Social Security Act, from January 1, 2018 through May 12, 2020 (20 CFR 404.1520(g)).

12. [Plaintiff] has not developed any new impairment or impairments since May 13, 2020, the date [plaintiff]'s disability ended. Thus, [plaintiff]'s current severe impairment is the same as that present from January 1, 2018 through May 12, 2020.

13. Beginning May 13, 2020, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

14. Medical improvement occurred as of May 13, 2020, the date [plaintiff]'s disability ended (20 CFR 404.1594(b)(1)).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in [plaintiff]'s residual functional capacity (20 CFR 404.1594(b)(4)(i)).

16. After careful consideration of the entire record, the undersigned finds that, beginning May 13, 2020, [plaintiff] had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

17. [Plaintiff] is unable to perform past relevant work (20 CFR 404.1565).

18. [Plaintiff]'s age category has not changed since May 13, 2020 (20 CFR 404.1563).

---

[5] The ALJ determined that from January 1, 2018 through May 12, 2020, even if plaintiff had the residual functional capacity for the full range of sedentary work, a finding of "disabled" would be reached by application of Medical-Vocational Rule 201.14. (Tr. 26).

19. [Plaintiff]'s education level has not changed (20 CFR 404.1564).

20. Beginning May 13, 2020, transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21. Beginning May 13, 2020, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1560(c) and 404.1566).[6]

22. [Plaintiff]'s disability ended May 13, 2020, and [plaintiff] has not become disabled again since that date (20 CFR 404.1594(f)(8)).

(Tr. 21-30).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 97 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[6] Based on the residual functional capacity for the full range of medium work and plaintiff's age, education, and work experience as of May 13, 2020, a finding of "not disabled" is directed by Medical-Vocational Rule 203.22.

5

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

Plaintiff raises two assignments of error limited to the time period after May 12, 2020: (1) the ALJ did not properly determine plaintiff's residual functional capacity (RFC) for a full range of medium work; and (2) it was improper for the ALJ to rely on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, in finding plaintiff not disabled for the period after May 12, 2020.

1. RFC determination

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his case file. (*Id.*). The governing regulations[7] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

---

[7] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

Plaintiff argues that the ALJ did not properly determine his RFC for medium exertion work after May 12, 2020. The assignment of error is two-fold. First, plaintiff argues that the ALJ did not properly consider medical evidence or his testimony relating to his symptoms—in particular, plaintiff's low back pain and left leg numbness. Plaintiff points to medical evidence from 2018 showing left lower extremity pain (Tr. 269), a spinal stenosis diagnosis (Tr. 270), and chronic left L-5 radiculopathy (Tr. 478-80). Plaintiff argues that the ALJ overstated records reflecting that he was doing well after a September 2019 spinal fusion surgery; ignored his testimony about continued limitations (e.g., unable to look up or down, limited neck extension, unable to sit for an hour, unable to stand for more than five minutes, and unable to lift more than eight pounds (Tr. 41, 44-45)); and ignored the recommendation by Jessica Fortman, PA-C, that he should "avoid activities that put the spine at risk" (Tr. 391). Plaintiff also seems to argue that the ALJ failed to properly assess two medical opinions in the record: the state agency's June and August 2019 assessments that plaintiff was limited to light work (*see* Tr. 56-59, 68-71) and Ms. Fortman's May 12, 2020 opinion that plaintiff could resume normal activities (Tr. 391).

The Commissioner argues that plaintiff's arguments are based plaintiff's subjective testimony and evidence predating the period at issue, which began on May 13, 2020. The

Commissioner points to the ALJ's consideration of records (discussed in more detail below) reflecting plaintiff's improvement following spinal fusion surgery in September 2019. (*See* Tr. 28, referring to Tr. 391, 395-96, 464; and Tr. 29, referring to Tr. 490, 492, 494, 519, 531-42). The Commissioner also argues that the ALJ properly considered both the state agency's RFC assessments and Ms. Fortman's opinion. The Commissioner emphasizes that the RFC need not correspond to a particular medical opinion or assessment. *See Tucker v. Comm'r of Soc. Sec.* 775 F. App'x 220, 226 (6th Cir. 2019).

In reply, plaintiff emphasizes that Ms. Fortman's use of the phrase "normal activities" applied to him, specifically, and meant something more limited than it would have if used in a general sense. Plaintiff argues that the ALJ should have inquired into the actual quality/frequency of the activities of daily living cited as supporting the ALJ's RFC determination (i.e., biking and walking (*see* Tr. 29)).

### a. *Plaintiff's symptoms*

The Court begins with the ALJ's analysis of the medical evidence and plaintiff's testimony related to his symptoms. ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." Social Security Ruling (SSR)[8] 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her

---

[8] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1. To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3. *See also* 20 C.F.R. § 404.1529(a); *Jones*, 336 F.3d at 475-76. Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

    (i)    Your daily activities;

    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

>  (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>  (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the

factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . .").

Here, the ALJ acknowledged plaintiff's testimony, including plaintiff's alleged significant sitting and standing limitations and inability to lift more than a gallon of milk. (*See* Tr. 25). The ALJ also noted that plaintiff testified that he performed chores, drove, and took walks—though his capacity for these activities was "diminished." (*Id.*). The ALJ then surveyed plaintiff's medical records post-2019 fusion surgery. Upon discharge from surgery, plaintiff reported improvement. (Tr. 28, referring to Tr. 464 (September 20, 2019 discharge summary noting that "[p]reoperative symptoms were improved")). Shortly after surgery, plaintiff was in only mild pain without complications. (*Id.*, referring to Tr. 396 (October 1, 2019 post-operation visit noting reported "substantial improvement")). Three months post-operation, though he used a brace, plaintiff "report[ed] improvement in his symptoms" and imaging showed "significant[ ] improve[ment.]" (*Id.*, referring to Tr. 394 (December 10, 2019 post-operative visit)). Imaging from June of 2020 showed only mild hypertrophic spurring from C3 through C7 and only mild anterolisthesis at C2-3. (*Id.*, referring to Tr. 485).

The ALJ noted that plaintiff established care with David J. Demarco, M.D., a primary care physician, in August 2020. (Tr. 29). Plaintiff reported numbness, pain, and reduced motion in his cervical spine but also reported some biking and regular walking. (*Id.*, referring to Tr. 490 (August 2020 visit) and Tr. 531 (February 2021 visit)). In addition, in the review of symptoms section of the August 2020 record, plaintiff reported no arthralgias, back pain, gait problems, neck pain, or neck stiffness; and plaintiff reported taking no medication for his back. (*Id.*, referring to Tr. 492). Dr. Demarco assessed plaintiff as "doing well overall" and did not prescribe any treatment related to back issues. (*Id.*, referring to Tr. 494-95). Though Dr. Demarco prescribed

11

Lidoderm patches in September 2020 for plaintiff's neck pain (*see* Tr. 507), plaintiff had elected to stop using them by December 2020. (T. 29, referring to Tr. 519). Records from 2021 did not reflect back symptoms or findings and focused on unrelated medical conditions. (*Id.*, referring to Tr. 531-42).

The Court finds no error with the ALJ's assessment of plaintiff's symptoms. The ALJ considered plaintiff's testimony about his alleged limitations. The ALJ explained, however, that the medical evidence following plaintiff's September 2019 fusion surgery showed significant improvement. *See* 20 C.F.R. § 404.1529(c)(3)(v). The ALJ considered the fact that plaintiff was walking and biking post-surgery. *See* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that plaintiff had voluntarily discontinued the only medication that had been prescribed for his neck pain and did not take other medications. *See* 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ emphasized that neck issues were not treated or even reported by plaintiff as of February 2021. *See* 20 C.F.R. § 404.1529(c)(3)(ii).

Plaintiff's argument that the ALJ erred by failing to consider his symptoms of low back pain and left leg numbness is not persuasive. The parties agree that the portion of the ALJ's decision at issue concerns the period after May 12, 2020. In a September 2018 visit note from Brad Curt, M.D., plaintiff reported moderate to severe pain in the left lower extremities and a diagnosis of cervical spinal stenosis. (Tr. 269-70). A physical examination at this visit, however, reflected completely normal lower extremity lumbar range of motion and muscle strength and tone. In an August 2018 record from Todd Hayes, DO, plaintiff reported left leg pain and numbness and was diagnosed with subacute chronic left L-5 radiculopathy (Tr. 478). But the ALJ explicitly considered this evidence (*see* Tr. 25, discussing the August 2018 cervical MRI ordered by Dr. Curt (Tr. 279) and August 2018 EMG testing ordered by Dr. Hayes (Tr. 478)), and

12

plaintiff points to no evidence aside from his testimony that demonstrates continued issues with low back pain or left leg numbness.

The ALJ's analysis of plaintiff's subjective symptoms was consistent with the applicable regulation. The ALJ's decision further demonstrates that she properly considered the objective medical evidence *relevant to the time period in issue*. Substantial evidence supports the ALJ's RFC determination in these respects.

### b. *Opinion evidence*

Plaintiff also appears to argue that the ALJ failed to properly evaluate the state agency assessments and the opinion of Ms. Fortman. For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[9] *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[10] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

---

[9] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[10] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[11] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

---

[11] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

14

In assessments made prior to plaintiff's September 2019 surgery, the state agency reviewers found that he was capable of light work with postural, reaching, and environmental limitations. (*See* Tr. 56-59, 68-71). The ALJ found that the state agency assessments were not persuasive for the period after May 12, 2020. (Tr. 29). The ALJ explained that the state agency reviewers "did not have access to the treatment notes from May of 2020 or thereafter which discuss the substantial resolution of [plaintiff]'s symptoms. . . ." (*Id.*). This statement reflects that the ALJ considered the supportability of these assessments. The ALJ went on: "Treatment notes from the period subsequent to May of 2020 confirm the findings that medical improvement occurred. . . ." (*Id.*). The ALJ cites imaging records from June 2020 showing only mild findings and no complications from plaintiff's September 2019 surgery (Tr. 485), a July 2020 record from Dr. Curt showing an almost entirely normal musculoskeletal exam (Tr. 484), and the Dr. Demarco records from August 2020 to February 2021 discussed above showing that plaintiff stopped seeking treatment for back problems (Tr. 487-542). (*Id.*). This demonstrates that the ALJ considered the consistency of the state agency assessments with other medical evidence of record. The ALJ's evaluation of these assessments is therefore supported by substantial evidence.

On May 12, 2020, at a post-operative follow-up appointment, Ms. Fortman opined that plaintiff should "resume his normal activities but avoid activities that put the spine at risk." (Tr. 391). The ALJ found this opinion "persuasive to the extent it demonstrates that substantial healing and recovery had occurred." (Tr. 29). The ALJ noted that it was "consistent with the findings from the date of treatment" (*id.*), including that plaintiff reported "doing well overall" with "moderate symptoms" presenting as a "dull ache" that was "relieved by rest" (Tr. 391). The ALJ also noted that Ms. Forman's statement was "reinforced by subsequent treatment records."[12]

---

[12] The records subsequent to this date are primarily the Dr. Demarco records discussed above.

(Tr. 29). The ALJ considered both the supportability of Ms. Fortman's opinion and its consistency with the rest of the record. The ALJ's evaluation of her opinion is therefore supported by substantial evidence.

## 2. The Medical Vocational Guidelines ("Grid")

Plaintiff argues that the ALJ erred by relying only on the Grid because the state agency found that plaintiff had several non-exertional limitations, and these non-exertional limitations are inconsistent with medium work. *See* SSR 83-14, 1983 WL 31254, at *5 ("[T]o perform the full range of medium work as defined, a person must be able to do both frequent stooping and frequent crouching. . . ."); and SSR 85-15, 1985 WL 56857, *7 ("[B]ecause of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently. . . . This is also true for crouching. . . ."). Plaintiff notes that at the hearing, the ALJ's hypothetical questions incorporated these non-exertional limitations. Plaintiff argues that the ALJ's failure to account for these non-exertional limitations in her RFC determination was error.

The Commissioner argues in response that because the ALJ properly rejected the state agency assessments of non-exertional limitations, there ALJ did not err by relying exclusively on the Grid to determine that plaintiff was not disabled after May 12, 2022. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07-cv-331, 2009 WL 648597, at *4 (S.D. Ohio Mar. 11, 2009) ("While Plaintiff alleged nonexertional limitations, the ALJ found that Plaintiff had the residual functional capacity for the full range of light work. . . . Accordingly, it was proper for the ALJ to rely on the grids alone at step five of his analysis.").

In reply, plaintiff argues that the Commissioner ignored the relevant SSRs explaining the requirements for medium work. Plaintiff argues that he still had non-exertional limitations after

his September 2019 fusion surgery, as demonstrated by his testimony and medical evidence from 2018.

The Sixth Circuit has explained the intersection of non-exertional limitations and use of the Grids:

> [T]he SSA may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level. *Abbott v. Sullivan,* 905 F.2d [918, 926-27 (6th Cir. 1990)]; *Damron v. Sec'y of Health and Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985). Normally, where a claimant suffers from an impairment limiting only her strength (i.e., exertional limitations), the SSA can satisfy its burden through reference to the grids without considering direct evidence of the availability of jobs that the particular claimant can perform. We cautioned in *Abbott*, however, that where a claimant suffers from *nonexertional* limitations that significantly restrict the range of available work, "rote application of the grid is inappropriate." *Abbott*, 905 F.2d at 926.
>
> [T]he general rule in this circuit [is] that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

*Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008).

Because there was no error with the ALJ's evaluation of the state agency reviewers' assessment of plaintiff's RFC, the ALJ did not err by failing to account for the non-exertional limitations they endorsed. This assignment of error is overruled.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **OVERRULED,** the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that

17

judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 9/10/2024

Karen L. Litkovitz
Chief United States Magistrate Judge